SARTAIN, Judge.
Big “A” Sand and Gravel Company, Inc., (hereinafter referred to as Big “A”) has appealed an interlocutory order in which writs of sequestration and attachment issued against the defendants, Bay Sand and Gravel Co., Inc., (hereinafter referred to as Bay), Ace Sand and Gravel Co., Inc. (hereinafter referred to as Ace), Lex Jenkins and his wife, Ruth Jenkins were dissolved. Also appealed herein is a final judgment rendered in connection with that interlocutory order in which the appellant was condemned to pay to Ace $1,645.-33 as charges for the wrongful issuance of the writs and in which it was further cast for $5,000.00 attorney’s fees in favor of all four defendants.
A motion to dismiss the appeal from the interlocutory order dissolving the writs of attachment and sequestration has been filed by the appellees herein.
This protracted litigation, not yet heard by the District Court on the merits, is an action for an alleged breach of contract on the part of the defendants; more particularly, the plaintiffs claim that they agreed to sell, and the defendants agreed to buy all of the assets of Big “A” for $193,-919,28, those assets consisting of numerous pieces of heavy equipment used in the commercial production of sand and gravel, and all of the plaintiffs’ interest in a lease for those purposes located in the Parish of St. Helena, known as the “Harvel” lease. Also included in the alleged sale was all of the plaintiffs’ interest in a contract awarded it by a major sand and gravel user in the Baton Rouge area, Dunham Concrete Products, Inc., according to which Dunham agreed to purchase 85% of its sand and gravel requirements from Big “A” or its successors.
The record indicates that the negotiations between the parties surrounding the alleged sale began in the latter part of 1968 when Mr. A. T. Sanders, Jr., President of Big “A” approached Mr. and Mrs. Jenkins, also sand and gravel operators, with a proposition concerning the acquisition of Big “A” assets. The Jenkins, receptive to the possibility of the purchase, investigated the matter fully, appraised the equipment, and made an offer to buy for $180,000.00. This offer was rejected and the holdings of Big “A” were then leased in early 1969 to another sand and gravel operator. On August 1, 1969, as a result of the resumption of negotiations between Big “A” and the defendants, Bay, wholly owned by the Jenkins, began operation of the “Harvel” lease and use of the Big “A” equipment on that lease, which continued through May of 1970. Thereafter, the defendants abandoned further production on the Harvel tract and suit was subsequently filed by Big “A” and Sanders on March 15, 1971.
The petition alleges the contractual default of the defendants and also avers that *68 a sale was to be consummated on March IS, 1971, between Ace and Grangeville Sand and Gravel Co., Inc. (hereinafter referred to as Grangeville) in which assets of Big “A” were purportedly going to be sold by Ace to Grangeville. Based upon the alleged sale from Big “A” to the defendants, the plaintiffs asserted a vendor’s lien and privilege on the Big “A” equipment and prayed for writs of attachment and sequestration ostensibly to protect their interest in that equipment. However, the writs were not directed toward the seizure of those assets, but were sought only against the proceeds accruing to Ace from the Grangeville sale. By supplemental petition, the plaintiffs obtained similar writs upon all funds on deposit to the credit of Grangeville in the American Bank & Trust Company of Baton Rouge. Seized under these writs were $155,577.96 on deposit with that bank to the credit of Grangeville and a non-negotiable $15,000.00 note payable to Ace from Grangeville one year from its March 15, 1971 date.
On April 5, 1971, a motion to dissolve the writs of attachment and sequestration was filed by the defendants herein. The matter was tried over a three day period in which a voluminous record was compiled consisting of several hundred pages of testimony and numerous offerings and exhibits.
In written reasons for judgment filed on June 18, 1971, the District Judge found that the writs were improvidently issued due to their failure to fall within the ambit of the pertinent statutory provisions which authorize their use; damages and attorney’s fees were assessed as previously indicated. A formal judgment reflecting all of these rulings was signed on October 26, 1971. We affirm the judgment of the District Court.
The appellees have moved and strenuously argued before this court that the plaintiffs’ appeal from the interlocutory order dissolving the writs of attachment and sequestration should be dismissed as untimely. To adequately clarify this argument, it is necessary that the events surrounding the taking of this appeal be traced.
The written reasons for judgment were handed down on Friday, June 18, 1971. Counsel for the appellant indicates that he received a copy of those reasons on the following Monday, June 21st. On that day, he was also advised by the Judge’s minute clerk that the judge would be absent from the court until its next term began in September. Both counsel thereafter prepared judgments for submission, but neither could agree to .the other’s wording of the judgment and other judges on summer duty refused to sign any document submitted without mutual agreement. A judgment was not finalized until a conference between the counsel herein and the judge was held on October 26, 1971. An order granting a suspensive or devolutive appeal to the plaintiffs was signed on that day and appropriate bonds were filed on November 2, 1971.
Counsel for appellees contends that the appeal is untimely as to the dissolution of the writs because the judgment ordering the dissolution was an interlocutory order which requires no written, signed judgment and is final immediately upon rendition by the trial judge. They argue that the trial judge’s written reasons for judgment orders the dissolution of the writs, effective immediately, and that no written judgment is necessary to further finalize that order and as the written reasons were handed down on June 18, 1971, and plaintiffs’ appeal order was not signed until October 26, 1971, that the delays for appealing from the interlocutory order had lapsed. Parenthetically, it should be noted that the motion to dissolve is directed only to the appeal from the interlocutory order dissolving the writs and not from the appeal of the final judgment on damages and attorney’s fees, awarded the appellees, which was unquestionably perfected timely.
That the order dissolving the writs involved herein is an interlocutory order is *69 well settled. See Pittman v. Lilly, 197 La. 233, 1 So.2d 88 (1941) and authorities cited therein. There seems to be no dispute by either counsel that the interlocutory order dissolving these writs is an appealable order within the contemplation of Code of Civil Procedure Article 2083, as irreparable injury to the plaintiff might arise by their dissolution. It also does not seem to be seriously disputed that such an order may be final without the signing of a formal, written judgment. Wickham v. Nalty, 41 La.Ann. 284, 6 So. 123 (1889). The pivotal issue here is whether it was the intent of the trial judge that his order dissolving the writs be final upon the handing down of his written reasons or upon the signing of the formal judgment.
We conclude that the District Judge intended that the dissolution of the writs be made final upon the signing of judgment. We note the following language in the last full paragraph of his written reasons:
“For the above and foregoing reasons there mill he judgment herein making the rule absolute to the extent that the writs of sequestration and attachment are dissolved. . . .”
Immediately following thereafter is this statement:
“Judgment will he signed accordingly.”
(Emphasis ours)
Counsel for the defendants stresses the importance of the fact that in the final judgment rendered on October 26, 1971, the trial judge deleted, and initialed the deletion of the word “RENDERED” from the sentence reading that:
“JUDGMENT READ, - AND SIGNED in Open Court on this 26th day of October, 1971.”
However, we note that the second paragraph of that judgment is phrased in these terms:
“IT IS ORDERED, ADJUDGED AND DECREED that the rule be made absolute and that the writs of attachment and sequestration issued herein on March 5, 1971, he and the same are hereby dissolved, ...”
All of which indicate to us finality upon signing of the formal judgment.
In Emmons v. Agricultural Insurance Company, 245 La. 411, 158 So.2d 594 (1963), the Supreme Court ruled that:
“The law is too well settled to require the citation of authority that appeals are favored in the law, must be maintained wherever possible and will not be dismissed for technicalities. Sam v. Deville Gin, Inc., La.App., 143 So.2d 838. Unless the ground urged for the dismissal is free from doubt an appeal will be sustained. Police Jury of Parish of St. James v. Borne, 192 La. 1041, 190 So. 124.”
This ambiguity will be resolved in favor of the appellant and the motion to dismiss is, therefore, denied.
We now turn to whether the writs of sequestration and attachment were properly dissolved and, if so, were the damages and attorney’s -fees awarded the defendants properly substantiated.
Louisiana Code of Civil Procedure Article 3571 provides that a writ of sequestration may issue on the following terms:
“Art. 3571. Grounds for sequestration
When one claims the ownership or right to possession of property, or a mortgage, lien, or privilege thereon, he may have the property seized under a writ of sequestration, if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish, during the pen-dency of the action.”
Whether a sale of Big “A” to any of the defendants was finalized is for the merits. Assuming, arguendo, that such a sale did take place, it would follow under the authority of C.C.P. 3571, supra, that the ven *70 dors could sequester any of that property upon proper proof that it was within the power of the vendee to conceal, dispose of, or waste the property or its revenues during the pendency of the action; this right is, of course, founded on the vendor’s lien existing in favor of the seller. Instead of seizing the property supposedly sold by Big “A” to the defendants, Big “A” has seized the proceeds of a sale which purportedly contained the transfer of some of the items which Big “A” “sold” to the defendants and which the defendants were about to resell to Grangeville. The District Judge found that no proof was made that the Ace-Grangeville sale contained any of the assets formerly owned by Big “A”. The record indicates that he could reach no other conclusion.
Basic to the seizure under sequestration instigated by the plaintiff would necessarily be the introduction of proof that certain items of equipment were, in fact, included in the sale from Ace to Grangeville. Yet, in the entirety of this record there is not one scintilla of evidence that would point to even a single item of Big “A” equipment being resold by Ace. Admitted into evidence as “Sanders No. 1” is a complete list of the assets of Big “A”, all of which were located on the Harvel lease. Also admitted into evidence and marked as “Ace No. 1” is a list of the assets of Ace involved in the sale from Ace to Grangeville. Proof positive of the defendants’ attempt to dispose of Big “A” assets would be a correlation of any of the items involved in the Grangeville sale which was originally a Big “A” asset. Yet, this Court’s attention is not directed to one single piece of equipment in “Ace No. 1” that might have been Big “A” property. Mr. and Mrs. Jenkins categorically deny that any of the Sanders assets were involved in the sale and that denial stands uncontradicted before us.
Without citation of authority, counsel for the plaintiffs urges upon us that it is within the contemplation of C.C.P. Article 3571, supra, that “revenues” from property subject to sequestration may be seized in addition to the property itself. While we find the validity of this contention to be at least questionable in view of the plain language of that article, to wit:
“ . . . he may have the property seized under a writ of sequestration, ...” (emphasis ours)
we find no need to reach that question here, as there has been no showing that either the items sold to Grangeville or the “revenues” from that sale, either directly or indirectly, involved anything other than previously owned Ace equipment, entirely separate from and unrelated to Big “A” property. The writ of sequestration was correctly dissolved.
As for the writ of attachment, we note the provisions of Code of Civil Procedure Article 3541:
“Art. 3541. Grounds for attachment
A writ of attachment may be obtained when the defendant:
(1) Has concealed himself to avoid service of citation;
(2) Has mortgaged, assigned, or disposed of his property or some part thereof, or is about to do any of these acts, with intent to defraud his creditors or give an unfair preference to one or more of them ;
(3) Has converted or is about to convert his property into money or evidences of debt, with intent to place it beyond the reach of his creditors;
(4) Has left the state permanently, or is about to do so before a judgment can be obtained and executed against him; or
(5) Is a nonresident who has no duly appointed agent for service of process within the state.”
Counsel for the appellants has conceded that, if the writ will lie in this case, it will do so based upon either paragraph 2 *71 or 3 of that article. Initially, it is observed that both of those sections are designed to protect “creditors” from the fraudulent disposition by their debtors of assets upon which the “creditor” might satisfy a claim. Our review of this record indicates that there is considerable doubt that Big “A” or A. T. Sanders, Jr. is a “creditor” of any of the defendants herein, although this will be finally decided by trial on the merits. The thrust of plaintiff’s argument in support of the writ of attachment is, however, that Bay is contractually obligated to Big “A” and that Bay’s assets were knowingly converted by the Jenkins to Ace to the jeopardy of Bay’s creditors. As did the trial judge, we find no merit in this contention. The record contradicts any inference whatever that the Jenkins were attempting to defraud or prefer any of their creditors or place any of their assets beyond the reach of parties who might have some claim against them, either by corporate manipulation or otherwise. To the contrary, it appears that the Jenkins and their corporations are in excellent financial condition and are solvent in every respect, as evidenced by the fact that their proven net worth seems to be several hundred thousand dollars more than a judgment for plaintiffs in this case would amount to. We also find no attempt on the part of the Jenkins to engage in corporate subterfuge to the detriment of Big “A”, as it appears that they contemplated their personal liability in these transactions, as well as those of their corporation. In the July, 1970 letter to Fidelity National Bank of Baton Rouge, entered as Sanders No. 3, this intent is made clear as twice in the body of that letter it is stated that Mr. Jenkins is acting in his individual capacity, as well as acting in his individual capacity, as well as acting as President of Bay Sand & Gravel Company, Inc. The letter was also signed by him in his individual capacity.
The writ of attachment was also properly dissolved.
The proven damages occasioned by the defendants and which do not seem to be disputed by the plaintiffs amount to $266.53 paid by Ace to Fidelity National Bank for a letter of credit incidental to obtaining a bond to secure the release of the monies seized and $1379.00 paid as premium on the release bond itself. The record reflects no opposition to these amounts and they were adequately proven and properly allowed by the Court below.
The District Judge also awarded the defendants $5,000.00 attorney’s fees which the appellants contend should be reduced. The defendants have answered this appeal as to that award and here pray for an increase to $10,000.00 and an additional $2,500.00 for their representatives before this Court. We find the award of the court below to be adequate, as our examination of these proceedings dispel any doubt that such a fee is unjustified. Without detailing all of the work done by counsel for the defendants in connection with this action, we note that there was a three day trial on the motion to dissolve, the taking of lengthy depositions and the compelling of certain answers thereto, the writing of several briefs, the issuance of subpoenas duces tecum, conferences with the trial judge and witnesses and other actions, all indicating far reaching preparation necessary to the successful dissolution of the writs. The sum for attorney’s fees incurred in the trial court is affirmed. Additionally, this matter has been appealed and defendants have answered asking that the amount be increased to cover the appeal. We think an increase in the sum of $750.00 is justified and amend the judgment accordingly.
The appellants are to pay all such costs as are related to this appeal, all other costs are to await a final determination on the merits.
Amended and affirmed.